UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KEVIN LAMAR LEWIS,<br><br>Defendant. | Case No. 25-cr-00391-EMC-1<br><br>**ORDER GRANTING MOTION TO SUPPRESS**<br><br>Docket No. 26 |

Defendant Kevin Lewis moves to suppress evidence obtained in a search of his vehicle following a vehicle stop.  The Court heard argument on April 23, 2026 and held an evidentiary hearing on June 25, 2026.

A threshold issue is whether the officers had reasonable suspicion to conduct the initial traffic stop that led to the arrest and vehicle search.  If they did not, the evidence they obtained from the search of the vehicle would be suppressed as a fruit of the poisonous tree. *Wong Sun v. United States*, 371 U.S. 471, 488 (1963).  The two officers who conducted the stop testified at the evidentiary hearing.  Officer Lin testified that he suspected a DUI because Defendant failed to maintain his lane position and was speeding.  He testified that the time – around 2:00 am on Saturday morning – also indicated a potential DUI.  As part of the record, dash cam and body cam footage along with police reports were admitted, as well as an expert report submitted by Defendant. Dkt. No. 27.

There is dash cam footage of Defendant's driving for one minute before he was pulled over.  Footage of the prior minute or two were taken by the dash cam, but absent request by the officer to retain that footage (Officer Lin made no such request), that footage was written over and no longer available.  The one-minute footage that was retained shows slight internal weaving

within the lane by Defendant during a curving stretch of Highway 101 in San Francisco.  It does not show Defendant crossing lane dividers.  At most, it shows Defendant touching against a lane divider once.  The footage also shows a different car, which changed lanes and ended up in between Officer Lin and the Defendant's vehicle, weaving internally and touching up against the lane dividers on multiple occasions.  It waved noticeably more than Defendant's vehicle in the available dash cam footage.

Officer Lim testified that he observed Defendant's car for two to three minutes total, up to two minutes before the dash cam recording began.[1]  Officer Lin testified that Defendant's driving was worse during the initial minute or so of his unrecorded observation of Defendant than that captured in the dash cam footage.  Officer Lin testified that Defendant touched lane dividers twice, with his wheel completely covering the lave dividers, something not caught on the dash cam footage.  Officer Lim also testified that Defendant maintained a consistent speed of 73 miles, as measured by a bumper pace test, which was 23 miles above the speed limit but faster than the other cars on the road by only 3-5 miles.  The dash cam footage did not reveal Defendant's vehicle was moving noticeable faster than other cars on the road at that time.  Officer Lim also testified that Defendant made a lane change during the period of unrecorded observation and that he would have noticed if Defendant had not signaled when he made this lane change.  The Court thus presumes Defendant properly signaled when he changed lanes, a fact consistent with his signaling to change lanes in exiting the freeway almost immediately upon Officer Lin's activating his lights.

The burden is on the Government to show the reasonableness of a warrantless search. *United States v. Carbajal*, 956 F.2d 924, 930 (9th Cir. 1992).  For vehicle stops, courts look at the "totality of the circumstances" to see whether the officer had a "particularized and objective basis" for suspecting criminal activity.  *United States v. Arvizu*, 534 U.S. 266, 273 (2002).  In *United*

---

[1] Defendant submitted evidence based on a test drive after the evidentiary hearing that if Defendant maintained a consistent 73 mph speed as asserted by Office Lin, Officer Lin could only have observed him for 1 minute and 19 seconds before the dash cam recording begins, and not a full two minutes.  Dkt. No. 39.  This is not inconsistent with Officer Lin's initial testimony that his total observation time was two to three minutes but does suggest that the total observation time was closer to two minutes than three minutes.  In either case, the recorded footage represents at least a one-third sample of Defendant's driving, and as much as nearly half of the observation period.

*States v. Colin*, the Ninth Circuit held that to have reasonable suspicion for a traffic stop based on internal lane weaving, there must be "*pronounced* weaving within a lane . . . [that] continues for a *substantial* distance." 314 F.3d 439, 446 (9th Cir. 2002) (emphasis in original). The court held that a car touching a right fog line and a center yellow line for ten seconds was not "pronounced" weaving sufficient to justify a stop. *Id.* The court also noted that the defendant had made "legitimate" lane changes preceding the weaving. *Id.*

The Court finds that the officers here did not have reasonable suspicion of intoxication when they initiated the traffic stop. First, the Court finds that the recorded footage itself shows no more than minor internal weaving, which occurred not on a straight road but on a significantly curvy stretch of Highway 101 in San Francisco. The Court cannot credit Officer Lin's testimony that Defendant's driving was meaningfully worse before the recording began. There is no reason to suspect Defendant's driving in the minute caught on dash cam suddenly and materially improved compared to the minute or two before. The officers had not yet flashed their patrol lights and Defendant had no reason to majorly adjust his driving between the one to two minutes of unrecorded observation and the one minute of recorded observation. Further, Officer Lin also admitted on cross that he had mistakenly described Defendant as "crossing" over a lane divider in his report when Defendant had in actuality only touched it. Moreover, Defendant's speed did not vary; it appeared constant and at most was only 2 to 3 mph faster than the other cars, if that. And while the stop occurred at around 2:00 am when, accordingly to Officer Lin, there are more inebriated persons on the road, it is also likely that there more drivers on the road whose driving may be within safety standards but who, due to slight fatigue, are less steady.

Under the totality of the circumstances, *Arvizu*, 534 U.S. at 273, the Government has not met its burden to show that the officers had reasonable suspicion that Defendant was intoxicated when they initiated the stop. As in *Colin*, there was no pronounced weaving over a substantial distance. Nor was there any other sign of driving under the influence which warranted the stop. *C.f. United States v. Ross*, 112 F. App'x 566, 568 (9th Cir. 2004) (affirming stop where car "weaved within its own lane *and* there was other suspicious behavior") (mem.) (emphasis in original). Accordingly, all fruits of the stop must be suppressed, including the gun found by the

3

officers when they subsequently searched Defendant's car.  *Colin*, 314 F.3d at 447.

Defendant's motion to suppress is **GRANTED**.

**IT IS SO ORDERED**.

Dated: 7/14/2026

_____
EDWARD M. CHEN
United States District Judge

United States District Court
Northern District of California

4